### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:02CV-3-M**

**DEBBIE ALLEN,**                                                                        **PLAINTIFF**

**v.**                                    **MEMORANDUM OPINION AND ORDER**

**LIFE INSURANCE COMPANY OF NORTH AMERICA,**                 **DEFENDANT**

**\* \* \* \* \* \* \* \* \* \* \* \***

This matter is before the Court on a motion by Defendant, Life Insurance Company of North America, to dismiss Plaintiff's claim with prejudice [DN 15], on a motion by Defendant for a hearing on its motion to dismiss [DN 25], and on a motion by Plaintiff, Debbie Allen, to return the case to the active docket for judicial review of Defendant's deemed denial of her claim and motion for oral argument [DN 27]. Fully briefed, these matters are ripe for decision.

## I.  BACKGROUND

Plaintiff, Debbie Allen, was an employee of A.G. Edwards.  While employed at A.G. Edwards, Plaintiff participated in a long-term disability insurance plan issued by Defendant, Life Insurance Company of North America ("LINA").  Group Insurance Policy LK-7436. Defendant, LINA, acts as a claim administrator for the Plan.  From 1997 to 1999, Plaintiff received long-term disability benefits based upon a diagnosis of Bipolar Affective Disorder with Depression, a condition for which the insurance payment had a 24 month maximum

limit of payment. Before her benefits ceased under the terms of the Plan, Plaintiff sought additional long term disability benefits arguing that she was suffering from a physical disability, Lyme Disease. In October of 1999, LINA ultimately denied the additional long-term disability income benefits finding "[b]ased on the fact that we have not received any additional medical information that would support an ongoing, physically disabling condition due to Lyme Disease as opposed to a mental illness . . ., we have determined that you are not eligible for continued Long Term Disability benefits beyond January 2, 1999." LINA at 448-449.

Plaintiff then filed this lawsuit alleging that Defendant had wrongfully denied Plaintiff's long term disability income benefits. The parties filed cross motions for summary judgment based on the administrative record that was before LINA at the time of its final benefit determination. The Court held that LINA's denial of benefits was arbitrary and capricious and granted in part Plaintiff's motion for summary judgment. In the Court's January 29, 2003 Order, the Court reversed LINA's denial of Plaintiff's claim for long term disability income benefits and remanded Plaintiff's claim for benefits to the Plan Administrator. Specifically, the Court stated that "[a]fter an appropriate time for submission of all necessary medical evidence by Allen and of any further medical examinations requested by the Plan Administrator, the Defendant should then make a determination of whether or not Allen is entitled to long term disability income benefits based upon a physical condition causing total disability."

After remand to the Plan Administrator, LINA requested an outside vendor to

schedule an independent medical examination (hereinafter "IME") of Plaintiff on April 15,

2003, in Bowling Green, Kentucky.   Plaintiff failed to attend the IME.   After being

contacted, plaintiff's counsel advised LINA's counsel that Plaintiff had moved from Bowling

Green to the Tampa Bay, Florida area in late summer of 2001.  Plaintiff's counsel requested

to submit additional medical records outside of the claim period, objected to the IME, and

requested all communications from LINA be directed through counsel.  (David Sparks's

April 16, 2003, Letter to Richard Bien.)    Additionally, by letter dated July 9, 2003,

plaintiff's counsel declined to provide LINA direct contact information for Allen and again

requested that all communications to Allen be channeled through him.   Furthermore,

plaintiff's counsel stated, in part, that "[b]efore LINA makes any final decision on whether

it wishes an independent medical examination(s), I would like for it to first review Debbie's

medical records, which I think will be quite illuminating."  (Sparks's July 9, 2003, Letter to

defense counsel at ¶2.)  Plaintiff's counsel then submitted three additional sets of medical

records in support of Plaintiff's benefit claim.  (See July 29, 2003, August 27, 2003, and

October 14, 2003 Cover Letters, Nichols Affidavit.)   In a letter dated October 14, 2003,

plaintiff's counsel stated in part:

> I would appreciate it if you could please provide me with some
> guidance as to the time frame that will be required to evaluate this claim.  In
> addition, should any type of medical examination of Debbie be required,
> please let me know so we can work out the details.  I do sincerely hope,
> however, that we can spare this poor lady the indignity of being further poked
> and prodded if at all possible.

(Sparks's October 14, 2003, Letter to Bien at ¶ 3.)  By letter dated January 9, 2004, plaintiff's

counsel informed defense counsel that Plaintiff had submitted all the medical records and asked if there was "anything of any kind that [LINA] needs from us that we have not already provided."  In February of 2004, plaintiff's counsel sent an additional letter to defense counsel requesting a determination of the claim. (Sparks's February 9, 2004 Letter to Bien.) There was no response to these letters.

According to LINA Appeals Claim Examiner, Karen Nichols, after LINA reviewed the newly submitted documents, LINA concluded that it still needed the IME to better understand the physical limitations caused by the deficits allegedly associated with Allen's Lyme disease so LINA could render a benefit determination.  (Nichols Affidavit at ¶ 13. ) Nichols avers that "[d]espite repeated requests, Ms. Allen's counsel refused to cooperate in the rescheduling of the requested IME." (Id.)

By letter dated November 24, 2004, LINA denied Plaintiff's claim for long term disability benefits.  Specifically, the letter states in part that

> [d]ue to Ms. Allen's failure to cooperate in the claim review process and, more specifically, her apparent refusal to submit to the requested IME, we are unable to determine the extent of Ms. Allen's physical limitations caused by the neurological deficits associated with alleged Lyme disease.  Under the Plan documents, Ms. Allen bears the burden of proving entitlement to coverage and to cooperate with us in a reasonable investigation into Ms. Allen's claim for benefits.  Ms. Allen has satisfied neither of these requirements.  Accordingly, I have no choice but to deny Ms. Allen's claim for long term disability benefits based on her alleged physical disability.
>
> Pursuant to the Court's Order of January 29, 2003, Ms. Allen may appeal this decision for an additional level of administrative review by LINA.  LINA reserves all rights it has at law, under the plan documents and otherwise.  This determination is issued in good faith and in compliance with the order of remand from the U.S. District Court for the Western District of Kentucky.

(November 24, 2004, Letter at 4.)

On June 2, 2005, Defendant filed a motion to dismiss the case with prejudice arguing that Plaintiff's original claim for benefits should be dismissed because she failed to submit to the IME reasonably requested by LINA and authorized by both the Plan documents and this Court's Order of January 29, 2003.  In October of 2005, Plaintiff filed a motion to return the case to the active docket for a *de novo* review of her long term disability claim.  The Court will first address Plaintiff's motion.

## II.  PLAINTIFF'S MOTION TO RETURN CASE TO ACTIVE DOCKET

Plaintiff requests the Court to return this case to the active docket so that the Court may judicially review *de novo* the Defendant's "deemed denial" of Plaintiff's claim for disability insurance benefits. First, Plaintiff argues that the November 2004 letter from LINA specifically failed to apprise Plaintiff of the specifics for filing a further administrative appeal, failed to apprise her of any time limits for doing so, and failed to apprise her of her right to ultimately seek judicial review, all of which is mandatory to include in such a letter under federal law. See 29 C.F.R. § 2560.503-1.  As a result, Plaintiff claims the denial letter is ineffective and no time limits have begun to run on her claim.  Second,  Plaintiff maintains that the Defendant failed to evaluate her claim in the time frame permitted by ERISA and as a result, this is a "deemed denial" case and the Court should review the Plaintiff's benefits claim under a *de novo* standard of review.

LINA disagrees and maintains that Plaintiff's argument is faulty because the parties were no longer subject to the Plan's administrative review deadlines and they were only

required to proceed with the review at a reasonable pace.  As a result, LINA could not have

provided any more detail than it did in the denial letter.  Additionally, LINA argues that

because Plaintiff filed her claim for benefits in 1997 and first challenged LINA's termination

of benefits in 1999, the version of 29 C.F.R. § 2560.503-1 relied upon by Plaintiff is

inapplicable to this claim.  Further, LINA argues that in the event the Court were to find that

its denial letter was not sufficient, the appropriate remedy is remand and not a *de novo*

review.    Finally, LINA argues that given the Plaintiff's refusal to submit to an IME, a

remand would represent a "useless formality" and the Court should dismiss Plaintiff's claims.

**Law**

ERISA requires a plan to provide participants with adequate notice of the reasons for

denying benefits and to afford a reasonable opportunity for a full and fair review.  McCartha

v. National City Corp., 419 F.3d 437, 444 (6th Cir. 2005).  Title 29 U.S.C. § 1133 provides

that every employee benefit plan shall:

> (1) provide adequate notice in writing to any participant or beneficiary whose
> claims for benefits under the plan has been denied, setting forth the specific
> reasons for such denial, written in a manner calculated to be understood by the
> participant, and
> (2) afford a reasonable opportunity to any participant whose claim for benefits
> has been denied for a full and fair review by the appropriate named fiduciary
> of the decision denying the claim.

29 U.S.C. § 1133. The current Department of Labor regulations further explain that

> [t]he notification shall set forth, in a manner calculated to be understood by the
> claimant--
>    (i) The specific reason or reasons for the adverse determination;
>    (ii) Reference to the specific plan provisions on which the determination is
> based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]

29 C.F.R. § 2560.503-1(g)(2005).[1]

The Sixth Circuit has adopted a "substantial compliance" test in deciding whether a denial notice meets the requirements of § 1133.  See McCartha, 419 F.3d at 444; Marks v. Newcourt Credit Group, Inc., 342 F.3d 444, 460 (6th Cir. 2003); Kent v. United of Omaha Life Insurance Co., 96 F.3d 803, 807-08 (6th Cir. 1996).  "To decide whether there is substantial compliance, courts consider all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances."  Marks, 342 F.3d at 460.  "'In this analysis, it is crucial for us to determine whether the plan administrators fulfilled the essential purpose of § 503-notifying [the claimant] of their reasons for denying [her] claims and affording [her] a fair opportunity for review.'"  McCartha, 419 F.3d at 444 (quoting Marks, 342 F.3d at 460).  If the denial notice is not in substantial compliance with § 1133, the Sixth Circuit has stated that "reversal and remand . . . to the plan administrator is ordinarily appropriate."  Id.; Marks, 342 F.3d at 460;

---

[1]  Section 2560.503-1 was amended in 2000 and "appl[ies] to claims filed under a plan on or after January 1, 2002." § 2560.503-1(o)(1).  But see McCartha v. National City Corp., 419 F.3d 437 (6th Cir. 2005)(citing this regulation with respect to a pre-2002 claim).  The only substantive change as it relates to the notification requirement was in subsection (iv).  Prior to the 2000 amendment, subsection (4) provided that the notice should include "[a]ppropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review." 29 C.F.R. § 2560.503-1(f)(4)(1999).

VanderKlok v. Provident Life and Accident Ins. Co., Inc., 956 F.2d 610, 619 (6th Cir. 1992).

**Discussion**

*A. Sufficiency of Notice*

Plaintiff claims that LINA's written notice of denial did not sufficiently apprise of her the Plan's review procedures or the time limits applicable to such procedures. LINA's written notice of denial stated in relevant part that:

> Pursuant to the Court's Order of January 29, 2003, Ms. Allen may appeal this decision for an additional level of administrative review by LINA. LINA reserves all rights it has at law, under the plan documents and otherwise. This determination is issued in good faith and in compliance with the order of remand from the U.S. District Court for the Western District of Kentucky.

(Nichols November 24, 2004, Letter at 4.)

Under the current regulations, 29 C.F.R. § 2560.503-1 requires a plan administrator to include in the written or electronic notice of the adverse determination "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]" 29 C.F.R. § 2560.503-1(g)(iv). Clearly, the Defendant failed to substantially comply with the current ERISA notification requirements.

The Defendant argues that the current version of the regulation is not applicable to Plaintiff's claim. As discussed above, § 2560.530-1 was amended in 2000 and "appl[ies] to claims filed under a plan on or after January 1, 2002." § 2560-503-1(o)(1). Defendant argues that the Plaintiff first filed her for benefits in 1997 and first challenged LINA's

8

termination of benefits in 1999, and therefore, the regulations in effect at the time the

Plaintiff filed her original claim should control the issue of whether the notification is

sufficient.  Interestingly, the Defendant does not address the sufficiency of its notice under

either the 1997 or 1999 ERISA regulations.

Under the regulations in effect at the time Plaintiff's claim[2] was filed, 29 C.F.R. §

2560.503-1 required a plan administrator to provide written notice of "[a]ppropriate

information as to the steps to be taken if the participant or beneficiary wishes to submit his

or her claim for review."  29 C.F.R. § 2560.503-1(f)(4) (1999).[3]  Based on the same ERISA

notification requirements at issue in the present case, the Sixth Circuit held that a denial letter

which does not contain explicit information as to the steps to be taken for obtaining review

---

[2]The claim ultimately denied by LINA was a claim for disability benefits based upon a
diagnosis of Lyme disease submitted by Plaintiff in 1999.  Therefore, the Court will examine the
1999 version of the regulation in question.

[3] The notice requirements in effect in 1999 provided as follows:

Content of notice. A plan administrator or, if paragraph (c) of this section is
applicable, the insurance company, insurance service, or other similar
organization, shall provide to every claimant who is denied a claim for benefits
written notice setting forth in a manner calculated to be understood by the
claimant:
      (1) The specific reason or reasons for the denial;
      (2) Specific reference to pertinent plan provisions on which the
      denial is based;
      (3) A description of any additional material or information
      necessary for the claimant to perfect the claim and an explanation
      of why such material or information is necessary; and
      (4) Appropriate information as to the steps to be taken if the
      participant or beneficiary wishes to submit his or her claim for
      review.

29 C.F.R. § 2560.503-1(f)(1999).

of a claim violates ERISA. In <u>VanderKlok v. Provident Life and Accident Ins. Co., Inc.</u>, 956

F.2d 610, 615 (6th Cir. 1992), the Sixth Circuit found that the procedural notice was

inadequate under Section 1133 because the letter failed to provide specific reasons for denial

of the benefits and because it failed to provide "explicit information as to the steps to be

taken if the employee wishes to submit his claim for review." <u>Id.</u> at 616.  Additionally, other

courts applying this language have held that the denial must notify the claimant of appeal

procedures under the plan, including the time limits applicable to an administrative review.

<u>See, e.g.</u>, <u>Burke v. Kodak Retirement Income Plan</u>, 336 F.3d 103, 107 (2d Cir. 2003), <u>cert.</u>

<u>denied</u>, 540 U.S. 1105 (2004)(2000 claim for benefits)("A written notice of denial must be

comprehensible and provide the claimant with the information necessary to perfect her claim,

including the time limits applicable to an administrative review." <u>Id.</u>); <u>DeMatte v.</u>

<u>Brotherhood of Industrial Workers' Health and Welfare Fund</u>, 1996 WL 764540, *3 (M.D.

Fla. August 13, 1996).

The written notice LINA provided with regard to the Plan's review procedures was

insufficient and did not comply with the procedural protections afforded by ERISA. The

regulations require that the written notice of denial of a claim set forth "[a]ppropriate

information as to the steps to be taken if the participant or beneficiary wishes to submit his

or her claim for review." 29 C.F.R. 2560.503-1(f)(4).  Although the denial letter mentioned

"an additional level of review," the denial notice did not set forth the Plan's administrative

review procedure or specifically refer the Plaintiff to the Plan provisions for information

about the review procedure.  Thus, LINA's failure to provide Plaintiff with a description of

the Plan's review procedures renders the notification deficient.  "Such an omission is not excusable."  Ross v. Diversified Ben. Plans, Inc., 881 F. Supp. 331, 335 (N.D. Ill. 1995)(citing Wolfe v. J .C. Penny Co., Inc., 710 F.2d 388, 392 (7th Cir. 1983) ("subsection (4) of 29 C.F.R. § 2560.503-1 must invariably be met to satisfy section 1133(2)")).  See also Vanderklok, 956 F.2d at 617.  Additionally, LINA failed to expressly state the time limits for submitting a claim for review.   Due to these deficiencies, the Court concludes that LINA's denial letter did not substantially comply with 29 U.S.C. § 1133.

Defendant argues that it was not required to provide notice of the appeal procedures, including the Plan's 60-day period for filing an appeal in the written notice of denial. Defendant contends that the Plan's administrative review deadlines no longer govern Plaintiff's claim after the Court's order remanding the claim to LINA for further review. Contrary to the Defendant's argument, nothing in the Court's original Memorandum Opinion and Order was intended to remove Plaintiff's disability claim from the administrative review deadlines set forth in the Plan.  Furthermore, if the Court were to adopt Defendant's argument, then Plaintiff's appeal time for challenging the November 24, 2004, denial of benefits would never run.

Defendant also argues that to the extent the Plan's administrative review deadlines were still operative, Plaintiff and her lawyer were well aware of the administrative review procedure.  Contrary to Defendant's argument, the fact that Allen's attorney had a copy of the Plan, and thus the means to ascertain the proper steps for requesting review in no way excuses LINA's failure to comply with the Department of Labor's regulations.  See, e.g.,

Epright v. Environmental Resources Management, Inc., 81 F.3d 335, 342 (3d Cir. 1996);

Ross, 881 F. Supp. at 335.

Because LINA's denial of benefits letter failed to provide Plaintiff with the specific

notice requirements set forth in 29 C.F.R. § 2560.530-1, the Plaintiff was denied a full and

fair review under § 1133 of ERISA.  As a result, it is appropriate that the Court remand this

matter for further review by the Plan Administrator.  "Where administrators have failed to

comply with the procedural requirements of § 503, it is ordinarily appropriate to reverse the

denial of benefits and to remand the case to the plan administrators . . . ."  Marks v. Newcourt

Credit Company, Inc., 342 F.3d 444, 461 (6th Cir. 2003).  See also Syed v. Hercules, Inc.,

214 F.3d 155, 162 (3d Cir. 2000), cert. denied, 531 U.S. 1148 (2001)("[T]he remedy for a

violation of § 503 is to remand to the plan administrator so the claimant gets the benefit of

a full and fair review."); Weaver v Phoenix Home Life Mutual Ins. Co., 990 F.2d 154, 159

(4th Cir1993);  Wolfe v. J. C. Penney Co, 710 F.2d 388, 393 (7th Cir. 1983); Jones v.

American Airlines, Inc., 57 F. Supp. 2d 1224, 1238 (D. Wyo. 1999); Stegelmeier v. Doug

Andrus Distributing, Inc., 2004 WL 736831, *12 (D. Utah 2004).

The Defendant argues that because the Plaintiff has refused to submit to a

neuropsychological exam for two years, a remand in this case would be unproductive and the

Court should instead dismiss Plaintiff's claims against LINA.  The Sixth Circuit has

recognized that a remand for a procedural violation is not required if it would represent a

useless formality.  McCartha, 419 F.3d at 444; Kent, 96 F.3d at 807.   However, given the

record, the Court cannot say at this time that a remand would represent a useless formality.

While LINA contends that Plaintiff has refused to submit to a neuropsychological exam, there is no documentation in the record that LINA actually requested another IME after receiving Allen's additional medical records. In fact, on at least two occasions it appears that plaintiff's counsel inquired if LINA needed any further information from Allen to decide the claim. While the Court is aware that LINA's Appeals Claim Examiner, Karen Nichols, has represented that Allen's counsel refused to cooperate in the rescheduling of the requested IME, her statement alone cannot support a finding that remand of the claim would represent a useless formality given the letters from plaintiff's counsel in the record.

### B.  Deemed Denied

Plaintiff argues that because LINA failed to process her claim within the time limits afforded by ERISA, the claim should be "deemed denied" and subject to a *de novo* standard of review.  Under the regulations in effect at the time of Plaintiff's claim, if a decision was not furnished to the claimant within the time limits provided in the regulation, the "claim shall be deemed denied on review." 29 C.F.R. § 2560.503-1(h)(4). "The 'deemed denied' provision has since been replaced by a provision which states that in the case of a failure to follow the claims procedures specified in the regulations, the claimant 'shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under [§ 1132(a).].'" Myers v. Iron Workers Dist. Council of Southern, 2005 WL 2979472 (S.D. Ohio Nov. 7, 2005)(citing 29 C.F.R. § 2560.503-1(l)).

The Court declines to deem Allen's claim denied.  Allen received a written decision on her claim.  While the written notification did not comply with all of the procedural

notification requirements, it did apprise Allen that her claim for long term disability benefits was denied based upon her "apparent refusal" to submit to the requested IME. Additionally, while the written notification admittedly did not comply with the time limits set forth under the Plan, a review of the record reveals that both parties did not appear to adhere to the time limits set forth for an initial review of the benefits claim under the Plan. In fact, an argument could be made by LINA that the time limit for making a benefits determination was tolled pending receipt of all medical information necessary to process the claim including the requested IME of Allen. See Evans v. American Express Financial Corporation Long-Term Disability, 2003 WL 23126327 (M.D. Tenn. November 5, 2003)(finding that the time for making a benefit determination under § 2560.503-1(e) (1999) is tolled pending receipt of all medical information necessary to process a claim). See also  29 C.F.R. § 2560.503-1(f)(4) (2005).  For these reasons, Plaintiff's motion to treat this claim as a "deemed denial" and review the disability claim under a *de novo* standard of review is denied.

Having concluded that LINA failed to comply with ERISA's procedural requirements, the appropriate remedy in the present case is to remand the case to the Plan Administrator for a determination of Plaintiff's long term disability claim.

### III.  DEFENDANT'S MOTION TO DISMISS

Defendant requests the Court to dismiss Plaintiff's long term disability claim with prejudice based on Plaintiff's failure to submit to a Court-ordered and Plan-required neuropsychological independent medial examination.  As discussed above,  Appeals Claim Examiner, Karen Nichols, states in her affidavit that after reviewing all the medical records,

LINA concluded that it still needed the IME and that Allen's counsel refused to cooperate in the rescheduling of the IME. However, LINA has produced no documents indicating that it actually requested an IME or that Plaintiff actually refused to submit to an IME <u>after</u> Plaintiff submitted her additional medical documents. Instead, it appears to the Court that between October of 2003 and February of 2004, plaintiff's counsel inquired of defense counsel if LINA needed "anything of any kind" from Allen to enable LINA to decide the claim. It would seem appropriate that a renewed request for an IME would be made at this time. However, the current record here does not show what response, if any, was made to this inquiry. Thus, the Court is unable to determine from the record here if LINA's denial based on Plaintiff's failure to submit to an IME was valid or arbitrary and capricious.

Defendant further argues that Plaintiff has waived her right to appeal and right to file suit against LINA in federal court on her disability benefit claim because she failed to appeal the denial in a reasonable time. Because the Court has determined the denial notice to be insufficient, Defendant's motion to dismiss the case is denied.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's motion to return the case to the active docket and to decide the appeal under a *de novo* standard of review [DN 27], the Defendant's motion to dismiss [DN 15] and the parties' motions for oral argument [DN 25, DN 27] are **DENIED**.

**IT IS FURTHER ORDERED** that this matter is remanded to the Plan Administrator for a determination of Plaintiff's long term disability claim. The parties should adhere to the

procedures and time limits set forth in the A.G. Edwards Long Term Disability Program

Benefits Plan.  (Exhibit B of Nichols Affidavit at 13.)  Pursuant to the terms of the Plan,

barring special circumstances, LINA should notify Plaintiff in writing within 90 days of its

decision.  (Id.)  Any notice of denial issued by the Plan Administrator should adhere to the

requirements set forth in the Plan (Id.) and 29 C.F.R. § 2560.503-1 (1999).  In the event

LINA issues a notice of denial, the Plaintiff should appeal the decision to LINA within 60

days, and if necessary, after exhausting all administrative remedies under the terms of the

Plan, seek review from this Court.

cc: counsel of record

16